**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Raymond P. Moore**

Civil Action No. 14-cv-00962-BNB

ALEX HOMER LINZY,

      Applicant,

v.

FRANCIS FAULK, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING § 2254 APPLICATION

---

      Applicant, Alex Homer Linzy, is in the custody of the Colorado Department of

Corrections (CDOC) and is incarcerated at the Correctional Facility in Limon, Colorado.

He has filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

(ECF No. 1) challenging the validity of his convictions and sentence imposed in Denver

District Court Case No. 04CR1331.  Respondents have filed an Amended Answer (ECF

No. 31), and Applicant has filed a Reply (ECF No. 30).  Having considered the same,

along with the state court record, the Court will deny the Application.

## I.  BACKGROUND

      In February 2006, Applicant was convicted by a jury in Denver District Court

Case No. 04CR1331 of second degree kidnapping, sexual assault and third degree

assault.  (ECF No. 11-1, at 3-6, 18).  He was adjudicated a habitual criminal and

sentenced to a 96-year prison term for the kidnapping conviction, a consecutive 48-

years-to-life term for the sexual assault conviction, and a concurrent two-year term for the assault conviction.  (*Id.* at 16-17).

Applicant's convictions and sentences were affirmed on direct appeal in *People v. Linzy* (*Linzy I*), No. 06CA0700 (Colo. App. Aug. 28, 2008) (unpublished).  (ECF No. 1, at 59).  The Colorado Supreme Court denied certiorari review on January 26, 2009.  (ECF No. 11-4).

Applicant filed his first motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c), on December 30, 2005, before his sentencing.  (ECF No. 1, at 76).  As explained by the Colorado Court of Appeals:

> . . . [D]efense counsel and the court explained to Linzy, and Linzy acknowledged he understood, that Crim. P. 35(c) was not applicable until after sentencing and the trial court therefore could not rule on Linzy's motion until that time.
> . . .
>
> On October 1, 2009, after the direct appeal was decided and the mandate issued, Linzy moved the district court for a free copy of the trial transcripts.  One month later, he asked to amend his original 35(c) motion and requested conflict-free counsel to pursue the 35(c) motion.

(ECF No. 1, at 76-77).

In April 2010, the state district court denied Applicant's first post-conviction motion on the merits.  (ECF No. 1, at 69-71).  Applicant's motion for "Rehearing" was denied in July 2010.  (*Id.* at 72-74).  The Colorado Court of Appeals affirmed the court's order in *People v. Linzy*, No. 10CA1050 (*Linzy II*) (Colo. App. Sept. 22, 2011) (unpublished).  (ECF No. 1, at 75-90).  The Colorado Supreme Court denied certiorari review on June 25, 2012.  (ECF No. 1, at 91).

While the appeal in *Linzy II* was pending, Applicant filed a second motion for state post-conviction relief on April 21, 2012. (ECF No. 11-1, at 12). The state district court denied the motion for lack of jurisdiction because the mandate had not issued on Applicant's appeal of his first post-conviction motion. (ECF No. 1, at 100). After the mandate issued on August 10, 2012, Applicant resubmitted his second Colo. Crim. P. Rule 35(c) motion, which was denied as untimely and successive on February 4, 2013. (*Id.* at 96-98). The Colorado Court of Appeals affirmed the district court's order in *People v. Linzy* (*Linzy III*), No. 13CA0418 (Colo. App. Feb. 27, 2014) (unpublished). (ECF No. 1, at 99-107). Applicant did not seek certiorari review in the Colorado Supreme Court.

Mr. Linzy filed his first Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in this Court on November 12, 2012 in Case No. 12-cv-03063-BNB. In response to a court order directing why the Application should not be dismissed as a mixed petition, Mr. Linzy requested that the entire action be dismissed without prejudice so that he could exhaust state court remedies for all of his claims. Senior Judge Lewis T. Babcock dismissed the application without prejudice on February 21, 2013. (ECF No. 1, at 92-95).

Mr. Linzy filed his second (but not successive) § 2254 application on April 2, 2014, raising twelve claims:

> (1) The trial court's *Batson* ruling deprived Applicant of his Fourteenth Amendment due process and equal protection rights (ECF No. 1, at 9-10).

> (2) The prosecutor's improper remarks during closing argument deprived Applicant of his Fourteenth Amendment due process and equal protection rights. (*Id.* at 12).

(3) Trial counsel was constitutionally ineffective in failing to: (a) conduct a prompt pretrial investigation; (b) investigate an alibi defense; (c) secure readily available exculpatory phone records; (d) consult a physician regarding the absence of corroborating medical evidence to substantiate the victim's allegations; (e) file a timely motion to suppress test results; (f) challenge the chain of custody of the prosecution's physical evidence; (g) object to the admission of inadmissible evidence at trial and timely request the presence of a laboratory technician to testify at trial; and, (h) in failing to present a proper closing argument.  (*Id.* at 14-27).

(4) Appellate counsel was constitutionally ineffective in failing to communicate with the Applicant.  (*Id.* at 28).

(5) The state appellate courts applied an incorrect standard of review to Applicant's claim of prosecutorial misconduct.  (*Id.* at 30).

(6) The state post-conviction court failed to enter written findings of fact and conclusions of law in denying Applicant's motion for post-conviction relief.  (*Id.* at 30).

(7) Trial and appellate counsel rendered constitutionally ineffective assistance by failing to challenge the sufficiency of the evidence supporting the asportation element of the kidnapping conviction.  (*Id.* at 33).

(8)  The trial court denied Applicant a fair trial by allowing the State's forensic expert to testify about DNA test results. (*Id.* at 35).

(9) Trial counsel rendered constitutionally ineffective assistance by failing to object to the testimony of the prosecution's forensic expert.  (*Id.* at 39).

(10) Appellate counsel rendered constitutionally ineffective assistance by failing to assert the issues raised in habeas claims 8 and 9 on direct appeal, the default of which should be excused under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).  (*Id.* at 45).

(11) The state district court's failure to appoint counsel in Applicant's first state collateral review proceeding prevented Applicant from raising all of his ineffective-assistance-of counsel (IAC) claims in his initial motion for post-conviction relief.  (*Id.* at 49).

(12) the state post-conviction court erred in determining, without an evidentiary hearing, that Applicant's second post-conviction motion was time barred and successive.  (*Id.* at 54-55).

In a July 16, 2014 Order, the Court dismissed claims 5, 6 and 12 for failure to present federal issues cognizable under § 2254.  (ECF No. 21, at 23).  The Court further stated that it did not construe claim 11 as a distinct claim for relief.  Claims 8 and 10 were dismissed as procedurally defaulted.  (*Id.*).  The Court deferred ruling on the applicability of a procedural bar to claims 3(c) -3(h), 7 (ineffective assistance of trial counsel), and 9, pending the Court's review of the state court record.  (*Id.*).  The Court ordered Respondents to file an Answer to claims 1, 2, 3(a), 3(b), 4 and 7 (ineffective assistance of appellate counsel) within thirty days of the July 16 Order.  (*Id.*).  The Court further instructed Respondents to include any additional argument concerning the merits of claims 3(c) – 3(h), 7 and 9, under *Martinez*.

In the July 16 Order, the Court also reserved ruling on the Respondents' assertion that the Application is time-barred.  (ECF No. 21, at 10-12).  The one-year limitation period in 28 U.S.C. § 2244(d) is not jurisdictional.  *See Day v. McDonough*, 547 U.S. 198, 205 (2006) (stating that a statute of limitations defense is not jurisdictional, but resembles other threshold barriers such as exhaustion of state remedies and procedural default).  There is no language in 28 U.S.C. § 2244(d) that would prohibit this Court from bypassing the issue of timeliness if the claims asserted in the § 2254 Application are without merit.  After carefully reviewing the state court record, the Court declines to resolve the complex issue of whether the one-year limitation period bars the Application because the Court concludes that the Application is subject to dismissal on the merits. *See Pough v. United States*, 442 F.3d 959, 965 (6th Cir. 2006) (discussing statute of limitation defense applicable to motions under 28

U.S.C. § 2255, and citing *Aaron v. United States*, 291 F.3d 708, 718 (11th Cir. 2002)

(Carnes, J., concurring) ("Sometimes it will be easier for a court to deny relief on the

merits than to figure out the issues relating to the statute of limitations. Nothing in the

statute prohibits a court from proceeding in that way"); *see also Hooks v. Workman*, 606

F.3d 715, 722 n. 5 (10th Cir. 2010) (noting, with apparent approval, that the district

court denied the IAC claims asserted in the amended § 2254 petition on the merits,

without resolving the statute of limitations defense advanced by Respondent).

The Court addresses the merits of Applicant's remaining claims below.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme

Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362,

390 (2000). Clearly established federal law "refers to the holdings, as opposed to the

dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case *sub
> judice*. Although the legal rule at issue need not have had its genesis in
> the closely-related or similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of
> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts. *Id*. at 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably

> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

8

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)

9

(citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle Applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  ANALYSIS

### A.  Claim 1

For his first claim, Applicant, an African American, asserts that the trial court's *Batson* ruling deprived him of his Fourteenth Amendment due process and equal protection rights (ECF No. 1, at 9-10).  He alleges that the prosecution's use of a peremptory challenge to excuse Juror C.H., who was the only African-American prospective juror, raised an inference of purposeful discrimination.  (*Id.* at 10-11). Applicant claims that the trial court failed to follow the burden-shifting procedure outlined in *Batson v. Kentucky*, 476 U.S. 79 (1986), to determine whether exclusion of Juror C.H. violated his constitutional rights.  (ECF No. 1, at 11-12).

In *Batson*, the Supreme Court held that purposeful discrimination based on the race of a juror violates the Equal Protection Clause of the Fourteenth Amendment.  476 U.S. at 84.  *Batson* provides a three-step analysis for determining whether a

peremptory strike runs afoul of this rule: (1) the defendant must present a prima facie case by showing facts supporting an inference of discriminatory purpose; (2) if the defendant satisfies step one, the burden shifts to the government to provide a race-neutral justification; and (3) if the government can do this, the court then decides whether purposeful racial discrimination nonetheless occurred. *See Johnson v. California*, 545 U.S. 162, 168 (2005).

"A [race-]neutral explanation . . . means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). *See also Rice v. Collins*, 546 U.S. 333, 338 (2006) ("Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices.") (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68, (1995) (per curiam)).   The final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768.

In *Linzy I*, the Colorado Court of Appeals applied the federal standards derived from *Batson*, *see* ECF No. 1, at 62-64, and rejected Applicant's claim on the following grounds:

> Contrary to defendant's assertions, the trial court properly employed the three-part test set forth in *Batson*. Upon defendant's *Batson* objection, the prosecution offered a number of race-neutral reasons for its challenge, all relating to the negative experiences that several of C.H.'s family members had had with the justice system, including her cousin's conviction of sexual assault, which was also charged in this case. This

satisfied the first two steps of *Batson*. *See Vieyra*, 169 P.3d at 211 (once the prosecution has offered a race-neutral reason for using the peremptory challenge, the first step of the *Batson* challenge becomes moot, and the defendant is presumed to have made a prima facie case).

Thereafter, the trial court gave defendant the opportunity to rebut the prosecution's justification and to demonstrate that the explanation was only a pretext. Defendant then argued:

> There were several [potential jurors] that were dishonest yesterday in chambers. We had [C.H.]. [The prosecution] passed on her for cause. I challenged her. He resisted the challenge and did not challenge her at that point. This is not a race neutral selection. This is one created out of animous [sic] violation [sic] of *Batson*. He wanted her yesterday. And the only reason he doesn't want her now is she might be on the jury.

The fact that the court was unconvinced by defendant's argument does not show that the court misapplied *Batson*.

For these reasons, we find that the trial court did not clearly err in rejecting defendant's challenge under *Batson*.

(ECF No. 1, at 65-66).

The state court record demonstrates that the trial court applied *Batson's* three-part procedure in deciding Applicant's claim. After Applicant raised a *Batson* challenge, the prosecution identified race-neutral reasons for the strike, and Applicant was allowed to argue why those reasons were a pretext for purposeful discrimination.[1] The trial court then denied the *Batson* challenge, stating that "[t]he Court finds a sufficient race neutral reason."[2]

---

[1] State Court R., 11/29/05 Trial Tr., at 108-110.

[2] *Id.* at 110.

Because the state courts identified and applied the correct federal law, the only issue before this Court is whether the state court's determination was reasonable.  On federal habeas review, the Court presumes the state court's factual findings, including credibility determinations, are correct, *see Saiz v. Ortiz*, 392 F.3d 1166, 1180 (10th Cir. 2004), and Applicant must rebut the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(d)(2).  Applicant does not point to any clear and convincing evidence that the prosecutor's exercise of a peremptory challenge was racially-motivated, and there is nothing in the state court voir dire proceeding to support his claim.[3]  Even if the trial court had reason to question the prosecutor's credibility in expressing doubt about whether Juror C.H. could be fair, that does not "compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race neutral justifications and conclude [Applicant] had shown a *Batson* violation." *Collins*, 546 U.S. at 341; *see also Swain v. Alabama,* 380 U.S. 202, 220 (1965) ("While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable.") (overruled on other grounds by *Batson*)).

The Court thus finds that the Colorado Court of Appeals' decision affirming the trial court's *Batson* ruling was reasonable under federal law.  *See Rice*, 546 U.S. at 338 (federal habeas court can only grant [an applicant's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for a *Batson* challenge."); *accord*

---

[3]*See generally* State Court R., 11/29/05 Trial Tr.

*Snyder v. Louisiana,* 552 U.S. 472, 477 (2008) (a court reviewing a *Batson* claim on direct appeal [without the deference required by AEDPA], must defer to the state trial judge's finding of no racial motivation "in the absence of exceptional circumstances." (internal quotation marks omitted)).  Applicant is not entitled to relief for claim one.

## B.  Claim 2

In claim 2, Applicant maintains that the prosecutor's improper remark during closing argument violated his Fourteenth Amendment due process and equal protection rights.  (ECF No. 1, at 12).  Specifically, he contends that the prosecutor's statement that "You can clearly hear Mr. Linzy . . .in the background [in the recording of the 911 call]," was not established by the evidence at trial and was unduly prejudicial.  (ECF No. 1, at 12-14).

Habeas relief is appropriate when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.").  In applying this demanding standard, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 699 F.2d at 1036; *see also Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) ("not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation.").

14

"The *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Mathews*, 132 S.Ct. 2148, 2155 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In *Linzy II*, the Colorado Court of Appeals reached the following decision on Applicant's claim:

> Prosecutorial misconduct that misleads a jury may be a basis to reverse a conviction. *Harris v. People*, 888 P.2d 259, 264 (Colo. 1995). "In a claim of prosecutorial misconduct, the reviewing court engages in a two-step analysis. First, it must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review." *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010) (internal citation omitted). Because defense counsel objected to closing statements at trial, we conduct a harmless error review. *Id*.

> Nothing in the prosecution's closing argument rises to the level of prosecutorial misconduct. Linzy points to the prosecution's statement that the jury could hear Linzy's voice in the background of the 9-1-1 call. The prosecution's closing argument drew inferences from the trial evidence. Witnesses testified that Linzy was present when the 9-1-1 call was made. Thus, the jury could reasonably infer, and the prosecutor could properly argue, that Linzy's voice was in the background of the call. Despite Linzy's assertions to the contrary, nothing in the record substantiates the claim that the prosecutor misled the jury. Therefore, we find no error.

(ECF No. 1, at 86-87).

The state appellate court determined Applicant's claim under a state law standard similar to the standard identified by the United States Supreme Court. Based on testimony by the victim and a neighbor that Applicant was present when the 911 call was made,[4] it was reasonable for the prosecutor to infer for the jury that it was Applicant's voice heard in the background of the 911 recording. *See Stouffer v.*

---

[4]State Court R., 11/29/05 Trial Tr., at 161; 12/0105 Trial Tr., at 152-54.

15

*Trammell*, 738 F.3d 1205, 1222, 1224 (10th Cir. 2013) (recognizing that a prosecutor may draw fair inferences from the evidence without running afoul of the Due Process Clause). Further, even the prosecutor's comment was misleading, it was an isolated remark and could not have impacted the verdict given the undisputed evidence that Applicant was present when the 911 call was made. In addition, the trial court instructed the jury during closing argument to "remember that what the attorneys say is not evidence. The jury has all the evidence that they may rightly . . . consider in their deliberations."[5]

The Court finds that the state appellate court's resolution of Applicant's claim was consistent with *Darden* and *Young*. Accordingly, Applicant is not entitled to federal habeas relief for claim 2.

## C. Ineffective Assistance of Trial Counsel (IAC Claims)

For his third claim, Applicant maintains that trial counsel was constitutionally ineffective in failing to: (a) conduct a prompt pretrial investigation; (b) investigate an alibi defense; (c) secure readily available exculpatory phone records; (d) consult a physician regarding the absence of corroborating medical evidence to substantiate the victim's allegations; (e) file a timely motion to suppress test results; (f) challenge the chain of custody of the prosecution's physical evidence; (g) object to the admission of inadmissible evidence at trial and timely request the presence of a laboratory technician to testify at trial; and, (h) in failing to present a proper closing argument. (ECF No. 1, at 14-27).

---

[5]State Court R.,12/2/05 Trial Tr., at 40.

16

Because Applicant properly exhausted state court remedies for sub-claims 3(a) and 3(b), the Court reviews those claims under the AEDPA standards.  Applicant did not properly exhaust state remedies for sub-claims 3(c) - 3(h).  He asserts that his procedural default of those claims should be excused under *Martinez* because the state post-conviction court failed to appoint counsel to represent him.  As discussed in the July 16, 2014 Order, a habeas petitioner cannot avail himself of the *Martinez* exception unless the IAC claims are substantial – i.e., have "some merit."  132 S. Ct. at 1318.

To prevail on his claims that trial counsel was constitutionally ineffective, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not

just conceivable.  *Id.*  The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.* at 697.

### 1.    Exhausted IAC claims: sub-claims 3(a) and 3(b)

In claim three, Applicant maintains that trial counsel was ineffective in failing to: (a) conduct a prompt pretrial investigation; and (b) investigate an alibi defense.  (ECF No. 1, at 16-17).

In *Linzy II*, the Colorado Court of Appeals applied the *Strickland* standard, *see* ECF No. 1, at 83-85, and rejected the IAC claims on the following grounds:

> That trial counsel developed a trial strategy different from Linzy's does not constitute substandard performance by counsel. The record here shows that the prosecution's witnesses were thoroughly cross-examined and the theory of the case was sufficiently explored, including probing the allegedly consensual nature of Linzy's sexual encounter with the victim. Claiming the result may have been different if a different strategy were followed does not prove prejudice.[6] Given the nature of the evidence, including the victim's unequivocal testimony, Linzy has failed to show by a reasonable probability that, even if his counsel had been ineffective, the result of the proceeding would have been different.

> In addition, contrary to Linzy's claim, the record indicates that his counsel conducted pretrial investigation. The defense investigator testified at trial that he interviewed one of the doctors, investigated the area where the victim was abducted, and viewed video from a local convenience store to see if anyone resembling Linzy entered the night of the assault.

> Because the record negates the need for an evidentiary hearing regarding defense counsel's effectiveness at trial, the trial court did not err by not holding a hearing on this issue.

(ECF No. 1, at 85-86).

---

[6]In *Linzy II*, the state appellate court noted:  Although Linzy claims that defense counsel failed to thoroughly investigate his alibi witness, Linzy's own admission about the timing of the phone calls to the potential witness renders it possible to have made the calls while the victim was still under Linzy's control. Thus, the decision not to call the witness could have been well-considered trial strategy.  (ECF No. 1, at 85).

The Court finds that the state appellate court's analysis comported with *Strickland*. Applicant's conclusory assertions that counsel failed to conduct a proper pre-trial investigation are insufficient to demonstrate prejudice. *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007) (allegations based on unsubstantiated assertions of fact are not sufficient to satisfy *Strickland*); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory in nature and without supporting factual averments"). Moreover, the Colorado Court of Appeals' factual findings concerning the pre-trial investigation conducted by counsel are supported by the state court record[7] and have not been rebutted by Applicant.

With regard to Applicant's claim that counsel failed to investigate an alibi defense, Applicant asserted in his state post-conviction motion that counsel should have presented testimony from Applicant's mother, and secured telephone records, to establish the following: (1) Applicant placed a telephone call to his mother at approximately 2:30 a.m. from a 7-Eleven located 25-30 blocks away from the house where the sexual assault occurred; and, (2) he called the victim between 10:00 and 10:15 p.m. from the house where the sexual assault occurred.[8]

The state court record reflects that trial counsel did investigate Applicant's asserted alibi that he made a phone call from a 7-Eleven at approximately 2:30 a.m., which was during the five-hour time frame the victim testified she was being held by the

---

[7]State Court R., 12/1/05 Trial Tr., at 242-52.

[8]*Id.*, Court File, at 208-210; 219-220.

Applicant.  The defense investigator testified that he reviewed the video surveillance tapes and that there were two or three individuals on the tapes that could have been the Applicant, but the investigator could not make a positive identification.[9]

Further, there is no reasonable likelihood that testimony from Applicant's mother, or the telephone records, would have changed the outcome of Applicant's trial.  The victim testified that Applicant pulled her out of her car around 10:30 p.m. and kept her in the house for about five hours, while he assaulted her.[10]  She further testified that she passed out twice during that time.[11]  As the Colorado Court of Appeals noted, the purported "alibi" evidence is not inconsistent with Applicant making a telephone call from the house just minutes before the crimes occurred there, nor does it preclude the possibility that Applicant could have left the crime scene for a brief period to make a phone call and then returned.  In addition, the DNA evidence corroborated the victim's testimony that Applicant sexually assaulted her.  Accordingly, the Court finds that the state appellate court's resolution of sub-claims 3(a) and 3(b) was not inconsistent with *Strickland*.  Sub-claims 3(a) and 3(b) will be dismissed.

> ### 2.    Procedurally defaulted claims: sub-claims 3(c) - 3(h).

Applicant asserts that his procedural default of sub-claims 3(c) - 3(h) should be excused under *Martinez* because the state post-conviction court failed to appoint

---

[9]State Court R., 12/1/05 Trial Tr., at 242-50.

[10]*Id.*, 11/29/05 Trial Tr., at 141-50.

[11]*Id.* at 150, 153.

counsel to represent him.  Again, *Martinez* applies only if Applicant's claims have "some merit." 132 S. Ct. at 1318.

### a.    sub-claim 3(c)

Applicant asserts in sub-claim 3(c) that counsel was ineffective in failing to secure telephone records to prove that, at the time of the kidnapping and assaults, Applicant was approximately 25 blocks from the crime scene, placing a telephone call to his mother.  (ECF No. 1, at 17-20).

This claim fails on the prejudice prong of *Strickland* for the same reasons discussed in the Court's analysis of sub-claims 3(b), *supra*.  Sub-claim 3(c) will be dismissed.

### b.    sub-claim 3(d)

Applicant contends that counsel was ineffective in failing to consult a physician regarding the absence of corroborating medical evidence to substantiate the victim's allegations that Applicant forced her to have sexual intercourse.  (ECF No. 1, at 21-22).

The victim's testimony is sufficient to establish the commission of a crime.  *See*, *e.g.*, *Rea v. Suthers*, 402 F. App'x 329, 331 (10th Cir. Nov. 12, 2010) (unpublished) ("the testimony from the victims was plainly sufficient to establish Rea's guilt"); *see also* *United States v. Samuels*, 493 F.3d 1187, 1192 n. 7 (10th Cir. 2007) (noting that "corroboration is generally not necessary for the court to find testimony credible").  Further, a physician testified that it is possible to be sexually assaulted without any physical evidence in the genital area.[12]  There was also evidence at trial that the victim

---

[12]State Court. R., 12/1/05 Trial Tr., at 50.

and Applicant had consensual sexual intercourse approximately three days prior to the sexual assault.[13]  The jury weighed all of this evidence and found Applicant guilty of sexual assault.  Applicant does not explain how any additional expert testimony would have tipped the scales in his favor at trial.  *See Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (prejudice not shown from counsel's failure to call witnesses where applicant could not show what helpful testimony the witnesses would have provided).  Accordingly, the Court finds that sub-claim 3(d) is without merit and, therefore, the claim will be dismissed.

c.  **sub-claims 3(e), 3(f), and 3(g)**

In claim 3, Applicant further asserts that trial counsel should have:  (e) filed a timely motion to suppress test results on the ground that the chain-of-custody failed to establish that the semen sample that matched the Applicant's DNA was removed from the victim; (f) challenged the chain of custody of the prosecution's physical evidence, and, (g) objected to the admission of inadmissible evidence at trial and to call the laboratory technician to testify at trial about the rape kit test results.  (ECF No. 1, at 22-26).  In support of his claim, Applicant relies on documents produced in pre-trial discovery which revealed that the rape test kit results were misplaced for 27 days and were originally labeled with an incorrect name and property number.[14]

The Colorado Court of Appeals has summarized the state law chain of custody requirement as follows:

---

[13]State Court R., 11/29/05 Trial Tr., at 187; 12/1/05 Trial Tr., at 71-72.

[14]*Id.*, Court File, at 209, 211.

Colo. R. Evid. 901(a) requires that an object must be identified as a condition precedent to its admissibility. And it is also necessary to identify an item that has been examined as one bearing the relevant connection. Normally, to establish that connection, it is necessary to present evidence showing a complete chain of custody of the item. *People v. Sutherland*, 683 P.2d 1192, 1197 (Colo.1984) ("The chain of custody of any blood sample must be established, and failure to do so may be excused only where circumstances provide reasonable assurances of identity and unchanged condition of the sample.").

If the trial court determines a complete chain of custody exists, any imperfections in the chain go to the weight to be given to the evidence, rather than to its admissibility. *People v. Grace*, 55 P.3d 165, 172 (Colo.App.2001).

Of course, it may well not be necessary in every case to establish a chain of custody to identify the object tested by the expert. If, for example, the expert describes an object as having the identifying marks placed on the item or its packaging by an investigator, and there is no evidence of any interim tampering, such identification may well be sufficient to justify its admission. *See Sutherland*, 683 P.2d at 1197.

*People v. Valencia*, 257 P.3d 1203, 1206 (Colo. App. 2011).

In this case, the prosecution's expert in forensic biology and DNA analysis testified, and defense counsel stipulated, that a forensic scientist with the Denver Police Department Crime Lab tested the vaginal swabs collected from the victim during the sexual assault exam performed by medical personnel at the Denver Health Medical Center.[15]   The testing revealed the presence of semen on the swabs used on the victim's vaginal area.[16]   The DNA analysis expert then extracted DNA from the semen,

---

[15]State Court R., 11/30/05 Trial Tr., at 211, 220-23.

[16]*Id.* at 221-22.

compared it to a control DNA sample taken from the Applicant, and concluded that the DNA samples were a match.[17]

Evidence of the rape kit test results was properly admitted through the testimony of the prosecution's DNA analysis expert.  Although Denver Police Department records indicate that the rape kit test results were originally mis-labeled, the error was rectified before the DNA analysis occurred.  There is no information before the Court that the evidence ever left the control of the Denver Police Department, or was tampered with in any way.[18]  Speculation about tampering is an insufficient basis upon which to exclude the evidence.  *See Sutherland*, 683 P.2d at 1198 (internal citations omitted).

The Court finds that trial counsel's failure to object to the admission of the rape kit test results on chain of custody grounds and to call the forensic scientist to testify at trial did not constitute deficient performance.  Sub-claims 3(e), (f) and (g) thus lack merit and will be dismissed.

### d.    sub-claim 3(h)

Applicant asserts in sub-claim 3(h) that trial counsel's closing argument was deficient in that counsel did not: proffer a defense theory; point out gaps in the State's evidence; or, emphasize inconsistencies in the testimony of prosecution witnesses. (ECF No. 1, at 27).

---

[17]*Id.* at 222-23, 230, 237-38.

[18]*Id.*, Court File, at 220-224.

The defense theory at trial, as stated in the Jury Instructions, was that Applicant did not kidnap or sexually assault the victim.[19]  And, contrary to Applicant's assertions, trial counsel's closing argument did point out inconsistencies in the testimony of prosecution witnesses.  Defense counsel also emphasized that the only evidence that Applicant sexually assaulted the victim was her testimony.  Counsel contended that the victim was not credible because she was an alcoholic who had been drinking at the time of the alleged sexual assault. Counsel also suggested that the victim made up the sexual assault to spite the Applicant, who was her on-again-off-again long-term boyfriend.  Trial counsel did not dispute the DNA evidence, but rather maintained that the evidence was attributable to consensual sex between the victim and the Applicant, which the victim testified occurred approximately three days before the assault.[20]

In his federal Application, Applicant does not allege a different viable defense theory, and he fails to articulate what specific additional arguments defense counsel should have made during closing argument that would likely have affected the outcome of his trial.  Accordingly, the Court finds that sub-claim 3(h) is not substantial and, therefore, the claim will be dismissed.

**f.      claim 7**

Applicant contends in part of claim 7 that trial counsel was ineffective in failing to challenge the sufficiency of the evidence supporting the asportation element of the kidnapping conviction.  (ECF No. 1, at 33-35).

---

[19]State Court R., Court File, Jury Instruction No. 20.

[20]*See generally* State Court R., 12/2/05 Trial Tr., at 33-48.

Contrary to Applicant's assertions, trial counsel did challenge the sufficiency of the evidence to support the kidnapping charge. Counsel moved for a directed verdict at the close of the prosecution's case, which was denied by the trial court.[21]

Further, the evidence at trial was sufficient to support the kidnapping conviction. Under Colorado law, a person commits second degree kidnapping when he or she "knowingly seizes and carries any person from one place to another, without his consent and without lawful jurisdiction." COLO. REV. STAT. § 18-3-032(1).

"[T]he asportation element of second degree kidnapping is the movement by the defendant of the victim from one place to another." *People v. Harlan*, 8 P.3d 448, 477 (Colo. 2000), *overruled on other grounds by People v. Miller*, 113 P.3d 743, 748 (Colo. 2005); *see also Apodaca v. People,* 712 P.2d 467, 475 (Colo.1985) ("The statutory definition of second degree kidnapping merely requires movement of the victim from one place to another . . . .") (internal quotation marks and citation omitted); *People v. Abbott,* 690 P.2d 1263, 1270 (Colo.1984) ("The defendant in the present case was charged with second degree kidnapping, and thus, 'only movement of the victim from one place to another was required.'") (quoting *People v. Bridges,* 199 Colo. 520, 528 n. 18, 612 P.2d 1110, 1116 n. 18 (1980)). Where the movement is not substantial, the prosecution must prove that such movement substantially increased the risk of harm to the victim. *People v. Rogers*, 220 P.3d 931, 935 (Colo. App. 2008).

The victim testified that Applicant pulled her out of her car, which was parked on a public street; pulled her to the corner; dragged her across the street, through some

---

[21]*Id*. at 230-31.

gravel; dragged her into the backyard of a vacant house, and then into the house, where she was assaulted and sexually assaulted.[22]   The victim's testimony about the injuries she suffered as a result of being dragged by Applicant was corroborated by the responding law enforcement officer and an examining physician.[23]

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the asportation element of second degree kidnapping beyond a reasonable doubt. *See Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) (setting forth standard for determining the sufficiency of the evidence, and quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in the original). Although the victim's neighbor testified that after he said good-bye to the victim at approximately 10:15 p.m. on the night of the kidnapping, he saw the victim and the Applicant walk down the street together,[24] that testimony did not refute the victim's statement that Applicant pulled her out of her car at approximately 10:30 p.m.  The Court must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

The Court finds that trial counsel's performance was neither deficient, nor prejudicial.  Claim 7 will be dismissed.

---

[22]State Court R., 11/29/05 Trial Tr., at 141-48.

[23]*Id.* at 171-78, 248; 12/1/05 Trial Tr., at 58-63.

[24]*Id.*, 12/1/05 Trial Tr., at 148-150.

### g.    claim 9

In claim 9, Applicant maintains that trial counsel rendered ineffective assistance by failing to raise a lack-of-foundation objection to the prosecution expert's testimony about the rape kit test results.  (ECF No. 1, at 39-40).   This claim is not substantial for the same reasons the Court rejected sub-claims 3(e), (f) and (g).  Claim 9 will be dismissed.

### D.    Ineffective Assistance of Appellate Counsel

Applicant asserts in claim 4 that direct appeal counsel was ineffective in failing to communicate with Applicant.  Applicant maintains, as part of claim 7, that appellate counsel should have challenged the sufficiency of the evidence to support the kidnaping conviction.  (ECF No. 1, at 28, 33-35).

Claims of ineffective assistance of appellate counsel are governed by the *Strickland* standard.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *Hannon v. Maschner*, 845 F.2d 1553, 1558 (10th Cir. 1988).  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  "Indeed, the winnowing out of weaker arguments so that counsel may focus the court's attention on those more likely to prevail 'is the hallmark of effective advocacy." *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005) (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991)). Counsel's failure to raise a meritless issue on direct appeal does not constitute deficient performance.  *Cargle*, 317 F.3d at 1202.

In *Linzy II*, the Colorado Court of Appeals applied the *Strickland* standard, *see* ECF No. 1, at 87-88, and rejected Applicant's claims on the following grounds:

> Linzy contends that appellate counsel was ineffective in failing to communicate with him and in failing to raise a sufficiency of the evidence challenge to his kidnapping conviction. We reject both contentions.
> ....
>
> Linzy argues that appellate counsel did not consult him or contact him regarding his appeal. However, he has failed to demonstrate how the alleged lack of consultation prejudiced his appeal. Linzy also contends that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his kidnapping conviction. However, Linzy has failed to show meritorious grounds for reversal. *Id*. Sufficient evidence in the record, including the victim's testimony and evidence of the severe scraping and bruising which experts said resulted from the victim being dragged to the house where Linzy locked her, supports the jury's verdict. *See People v. Thornton*, 251 P.3d 1147, 1149 (Colo. App. 2010) ("When examining the sufficiency of evidence, we view the evidence presented as a whole and in the light most favorable to the prosecution to determine whether the evidence is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt."); *see, e.g., People v. Rogers*, 220 P.3d 931, 935-36 (Colo. App. 2008) (movement of the victim to a place from where it was more difficult to escape was sufficient to support kidnapping verdict).
>
> Thus, we conclude Linzy has not shown how he was prejudiced by appellate counsel's conduct, and the trial court did not err by failing to hold an evidentiary hearing.

(ECF No. 1, at 87-89).

In support of his claim that appellate counsel failed to communicate, Mr. Linzy argued in his state post-conviction proceeding that counsel's eight-month delay in notifying him that the Colorado Supreme Court had denied his petition for certiorari review caused him to file an untimely federal habeas application. (ECF No. 11-6, at 14-15). However, Applicant was not prejudiced because the Court has declined to dismiss

his federal Application as time-barred. Accordingly, the Court finds that the state appellate court's resolution of claim 4 was a reasonable application on *Strickland*.

As for claim 7, the Colorado Court of Appeals' determination that the evidence was sufficient to support the second degree kidnapping conviction is substantiated by the state court record[25] and comports with the *Jackson* standard. As such, appellate counsel's failure to challenge the sufficiency of the evidence on appeal was not constitutionally deficient performance. *See Cargle*, 317 F.3d at 1202.

Claims 4 and 7 will be dismissed.

## IV. ORDERS

Accordingly, it is ORDERED:

1. Applicant Alex Homer Linzy's Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is DENIED and this case is DISMISSED on the merits.

2. No certificate of appealability will issue because Applicant has not made a substantial showing that jurists of reason would find it debatable whether the jurisdictional and procedural rulings are correct and whether the Application states a valid claim of the denial of a constitutional right.

Dated October 21, 2014, in Denver, Colorado.

BY THE COURT:

_____
Raymond P. Moore
United States District Judge

---

[25]*See* State Court R., 11/29/05 Trial Tr., at 141-46, 171-78, 248; 12/1/05 Trial Tr., at 58-63.